County PRMD made its final decision on the design review rules. Let me ask you this. You've got two kinds of claims. You've got a regulatory-taking claim, and then you've got a lot of others that I won't. I'll just cluster as other. The equal protection. The regulatory-taking claim. Right. The magistrate judge ruled against you kind of belt and suspenders. Number one, that you were too late, because in the magistrate judge's view, the final event was the approval of the actual building rather than the approval for the landscape. Right. But second, she said, to the extent that this is a regulatory-taking, you need, under Williamson, to apply to the State through its established procedures for compensation. This hasn't been done, and therefore, the regulatory-taking claim is unripe. Do you have a response to the unripeness part of that? Well, actually, we have dropped that particular claim in this appeal. And you don't need to. The regulatory-taking claim is gone? Yeah. We have dropped that one for that reason. Oh, okay. And so we're left with due process claims. Now, my second question then is, which was where I was headed with this, because it seemed to me that you were in trouble on that one because of that reason. Does the finality rule of Williamson apply to non-regulatory-taking claims? That is to say, if there were racial discrimination as the motivation for the decision of the first board, the Design Review Committee, and the later decision, that is to say, the later decision with respect to the landscaping was not done by any of those same people, does the Williamson finality that is applicable to the entire project, is that the statute of limitations test? That's certainly how I understand it, and there's abundant 15 years of precedent in the circuit on that, whether you take a look at Harrington, Kinsley, Hone v. San Benito County, Southern Pacific v. Los Angeles, Norco. The final decision requirement extends in land-use cases to equal protection and procedural due process claims, and I think that's very clear. Even if the basis for the cause of action is something that happened earlier? There are cases where, I mean, basically, Sonoma County. You're probably right about that, but that's what we're trying to do. Sonoma County seems to try to argue that all these different sub-agencies are different entities. Ultimately, everything turns on whether the landscaping decision can be made part of the basic decision or whether it's separate. I suppose you could look at it that way. I hope there's agreement that McDonald v. Yolo County says that Sonoma County is one entity and you sue the county, even though its advisory design review committee was the real actor here and PRMD was involved in it. And you have, as I understand those cases, you cannot sue until there's a final decision, and the decision that we have here, we're dealing with the- But there was a final decision to build the house, and you built it before the landscaping. But we built that at risk that we would not get the landscape plan approved. And so, you know, we were in a situation- If you get the landscape plan approved, you would get some other landscape plan approved, but you still have the house. Well, you could ultimately get to a point. It's certainly conceivable that you could not approve a landscape plan because, you know, we had such a series of unreasonable activities in this process that, you know- But this committee didn't even exist then, right? No, that's correct. So the basic thing you're complaining about didn't exist at the time of the landscape. But PRMD, which was approving in many other situations the, you know, the decision, this plan is not an entity in the county that we feel terribly comfortable with because, you know- But your basic complaint for damages seems to be that the delay in approving the- whatever was needed to start construction costs you more money. That's correct. All that happened before the landscape plan. Well, that takes us to- Is that correct, that that happened before the landscape plan? No, that is true. That is true. When we were going for the landscape plan, our building was largely completed. But then it's a question of when you- You know, certainly we knew that wrongful acts had occurred. We knew how we'd been treated in this process. But at the time, you know, we didn't know that we were going to have all these problems with the contracting, that we were going to be delayed, and that, you know, the price would escalate. It was just something we wouldn't know. We thought we were on track to meet our goals as far as building in the year 2000. And then because it was an incredible building boom in Sonoma County at that time, all of the delays we had that were really fostered from this design review committee essentially meant that all of the reasonably priced contractors had already been committed to other projects. But in general with statute of limitations, that won't- I mean, this is a little bit of an odd statute of limitations because of the finality problem. But if we didn't have the finality- I mean, that's the only thing it seems to me that gives you even a foot in the door is the finality problem. If you didn't have the finality problem, the fact that you didn't-that something bad happened to you, but you didn't know the full extent of your damages until later wouldn't extend the statute of limitations. Well, there's- That's a general tort law, isn't it? In California, you've got under toxic torts and insurance and under- But it's when the injury occurred, but not when you know the full extent of your damages, right? Right. In other words, if you-you know, if somebody leaves a sponge in your body and you don't- it's when you discover the sponge, but not when you discover the full extent of what your damages are going to be from the sponge. Okay. But we-in our case, we didn't-we did not anticipate at that time we were damaged at all when we went through this process. So- But you knew you were injured, i.e., that there had been a delay. But we did not know that the delay-you know, we did not know the implications of that delay. So that's why we feel we didn't know we'd been damaged. It didn't even occur to us at that point that we'd been damaged. But that can't be right. That is to say, mere delay is itself damage and opportunity costs and so on. You didn't know the extent of the damage. I mean, the stock market went down, as you say, reducing your funds. The building market gets tight, increasing your costs. I mean, you didn't know those things. Maybe you could have anticipated, but you certainly didn't know them. But you did know that you had been delayed, and delay itself in any economic project, even a sort of a domestic economic project, is injury. I understand what you're saying, but given the timeline that we were looking for, it was the accumulation of the appeals and all the rest of it that eventually became the problem. That's what made you mad, but I'm not sure that that's when your injury started. Let me turn for a minute to injunctive and equitable relief. The court below said that we had no standing to bring injunctive and equitable relief. We remain subject to these design review rules. They are invoked when you do a remodeling. If at some point we wanted to build an outstrip, this is five acres of land. We could put a barn or something like that. You're talking essentially a ripeness problem. Well, that was what the judge was saying. Well, I don't know if he was saying it right. I thought it was a standing. But basically, the county seems very, and it's true that the design review committee currently has been abandoned. There are movements afoot within the county that possibly resurrected in some form or another. The county certainly is very keen on preserving its ability to resurrect one of these things. In its brief, it cites to a 1926 Justice Holmes case saying that you should very rarely enjoin a local ordinance. It talks about a California statute that says ordinances shouldn't be enjoined. And it seems to us that this is one of those cases where they could come back and revisit. We could be subject to the same type of process again. The relief that we have been asking for in the injunctive area is basically to make the county, if they were ever to reinstate one of these things, to invoke the California Administrative Procedures Act and all of those, to me, very good government. Why do they want to argue with that kind of thing? And you want an injunction from the federal court telling the county to follow state law on something they haven't done yet. If they were to reinstate this type of advisory committee, that affected us. Isn't that speculative in the extreme? Number one, you don't know that they're going to do it. And number two, you don't know that if they do do it, they won't follow state law in doing so. And thirdly, you don't know that you're ever going to build a house or build anything that's going to be subject to any of the laws. Well, I certainly say over the course of our period of time we expect to live there that we would trip over this again. I've got 20 seconds left, so I'll cut it. We've got the argument at hand. We'll give you a minute on the other side. Good morning. May it please the Court. My name is Marshall Bluestone representing the defendants in this action. I respond to the arguments. I don't think there's a rightness issue even applies here with regard to because he's dropped the regulatory taking claims or the taking claims in the action. So what we look for is what the court pointed out was when the injury occurred. And the injury occurs when the act of the body takes place. And that is it couldn't have occurred later than the last time that the design review board acted, which was September of 1999. Well, that can't be right. I'm sorry. Go ahead. I'm sorry. The only question is whether the whole Williamson problem and the fact that he couldn't bring the case until there was finality is a special limitations rule so that what really matters is when was the permit final or when was the decision final, not so much when he had the injury to begin with. Well, I'm saying that I don't think the Williams rightness issue applies when there's no regular there's not a taking case before the court. I mean, he's going on a constitutional 1983 violations of equal protection due process claim. Let's ask it this way, because I'm not I think I disagree with you and you may be able to persuade me otherwise. But let's assume and I'm making this up. Let's assume that there are all kinds of very bad motives in this design review committee, including racial discrimination. And because of racial discrimination, they deny the permit. He then appeals and gets it reversed. He then brings suit. And you're saying when is the what is the statute of limitations start to run? Well, if this is going to start to run as soon as the design review committee denies based on racial discrimination, correct? Because it's not. That means that that every time there is a complaint based on racial discrimination arising out of the design review committee, you're going to get a lawsuit right then before the appeal takes place. That's what you is that what you want? Because otherwise, under your argument, the statute of limitations is going to run on them and they can't afford to wait for the see how the appeal comes out. So your office is going to be very busy. Well, Your Honor, if under the situation that this is not a taking case and we're taking out of the context of that and there is discrimination that occurs and it's racially motivated by the committee and they're denying. I'm asking if you understand what you're inviting in terms of the losses that will be filed that might go away. That is to say that the decision might be reversed administratively, but they can't afford to wait because under your argument, if they wait and they don't get it reversed, they're out of court. Well, they're not barred also. Why do you need this? I mean, isn't your key question when was the decision final? A decision to allow him to build the house. Well. And he built the house. And we had a permit to build the house. And he did build the house. Right? I agree with that, Your Honor. So the question is, so the key argument as I understand it is whether the landscape plan was so integral to the overall permitting scheme that without the landscape plan, he never really had a final decision. And what's your response to that? Well, obviously, he got a final decision in November of 1999 when he was granted the permit. A third party appealed that and the planning commission granted him. But he said that it was essentially contingent, that he still could have been forced to knock the whole house down if they had never gotten a landscaping plan in place, that he just took a chance. Well. Is that accurate or not accurate? That's nowhere in the record that I found that that's presented in the record, that he is building plan. He got a building permit and built the house. And he built the house based upon approval by the planning commission. And that permit, he went forward, and there's nowhere in the record that he was going to get the house knocked down. They had to submit a landscape plan. There's nowhere in the record where he states that the landscape plan caused him any damage. That was done by a different even ---- But what is the ---- this isn't really a record problem. It's a regulatory problem. What does the regulatory scheme provide? If there had not been an approval of the landscape plan, would the permit have been ---- could the permit have been pulled? Can the building ---- Could the permit to build the house have been pulled even though the house was built? I mean, that should be an answerable question with that regard to the record. Right. And, I mean, they already have the ---- they already built the house. And if you're ---- I don't understand if the house ---- I'm asking what the regulatory scheme provides, okay? Does the regulatory scheme provide that unless you have everything ultimately approved, you don't have a finally valid permit, as is his claim? Or is the house ---- the permit to build the house a sufficiently independent permit that can't be rescinded thereafter? It is, Your Honor. It's a right that the ---- once the permit is granted and it's gone through the approval process, it is a right, it's a property right to build the house at that point. And so they have final approval. They can't go back and change that at some point, the right that they've granted to the property owner. So they do have the right to build the house at that point. And they went ahead and did in this case. And anything ---- That's what the question comes down to. Is the regulatory scheme such that you could consider the building permit for the house to be contingent ultimately on getting a landscape permit? Well, it wasn't. What does the scheme show? In other words, you get the permit. Anywhere in the ordinance or in the permit itself does it say you have to get an approved landscape permit or this permit is no longer valid or something like that? Well, as part of the conditions of granting the building permit, there are conditions that are within granting a permit that certain things have to be done. And one of them could be the landscape that has to be done. But that is that a landscape agreement has to be done at that point. But as far as the building permit itself and the right to build, that right to build is independent of the landscaping that has to be done around the house. And so they have a right to build the house upon getting that permit. And they did, as I keep repeating myself. And in the case here, what I think is crucial is that they're not claiming any discrimination, nothing to do with the landscape permit itself. They're not even claiming any damages accrue because of the landscape permit. There's nothing that they're saying accrues or any damages that come about because the landscape was done by a different body. Right. Now, as I understand it, what they needed the landscaping permit for was not to build the house but to occupy the house. And if the landscaping permit were denied, the house could sit there empty, but the house was legitimately there. Is that your scheme? Yes, that is. The second permit was called an occupancy permit. Right. Not a building permit. Correct, Your Honor. It's an occupancy permit. And that has to do with, and that was issued by the agency later, and there's no claim that that process there caused it. It's an odd name for, you have to have your garden right before we'll let you move in, but okay, that's your scheme. Well, I think it has to do with what things they can negotiate with you on with regard to that. You guys want another, one more hammer. Okay. But with regard to the issue here, if there's no damage come from the landscape, they're not claiming any damage from it, and the building permit is with that issue here, that occurred, they built the house before that issue even arose with regard to that. So if they had had a taking claim, you would not have, and they otherwise had exhausted it, you wouldn't be able to maintain that they couldn't bring the takings claim until the landscape was approved. If they had a taking claim, well, I still think if they had a taking claim that the final review for the building permit was the, at the latest, January of 2000. Not the landscaping. Correct. Because it's a separate permit that was issued. On your view, then, they might have had a separate taking claim for failing to allow them to occupy and use their property if you had unreasonably denied the landscaping permit? Correct, Your Honor. And then I'd like to address, I have a few minutes left, regarding the injunction relief that was spoken about before. I think there are several reasons. The Board's been disbanded. That's an issue here. I think I agree with the Court that it is speculative about what may become in the future, whether the people that are assigned to the Board and what the criteria is. Yeah, I think we understand your argument on that point. Thank you, Your Honor. Okay. Thank you very much. Mr. Harrison, a minute. Thank you. Just briefly, on our supplemental record, 101 is the letter which granted our, approved our resident's design, and it does say that landscaping had to be, we had to submit a landscape plan to PRMB for review and approval. PRMB is the same agency that approved the landscape plan and also the building permit. So we're dealing with the same agency. But you don't contend that if you're denied the landscaping permit, the house has to come down. Well, it would be difficult to sell and difficult to occupy. You can't get a final occupancy. I understand that. And what a county might do in an abatement procedure, you know, I don't know. That would, in my view, be extreme, but I would say it's not impossible. But, you know, that's basically our point is I view all these decisions as intertwined, and it's a question of how you apply, you know, the Williamson finality principle. It's a tricky question. Okay. Thank you. Thank you very much, both sides, for a useful argument and an interesting case. Chang v. Sonoma County is now submitted for decision. Do you want to take a break after this? We'll do one more case before we take a short break. We'll do Bradford v. Ayers, and then we'll take a break before we begin with Green v. Housing Authority. May it please the Court. My name is Elizabeth Letcher. I represent Petitioner Raymond Bradford. I'd like to reserve three minutes, if possible, for rebuttal. Having jurors see a defendant shackled during trial causes unfair prejudice because it creates an inherent danger that the jury may form the impression that the defendant is dangerous and essentially brands the defendant as having a violent nature. That is precisely the kind of prejudice that Petitioner Raymond Bradford suffered in this case during his criminal trial. The danger of being branded in the jury's mind as a perpetually violent and out-of-control person. Bradford was tried for battery of prison guards during two cell extractions at Pelican Bay.
judges: T.G. Nelson, W. Fletcher, Berzon